You're going to have to give me some help with pronouncing your name, sir. May it please Your Honor, Damon Wodarczyk. May it please the Court. Your Honor, my name is Damon Wodarczyk. I represent the Turfgrass Group and the University of Georgia Research Foundation. Today we'd like to focus predominantly on the issue of how the District Court erred in finding that Attorney Nolan, attorney for turfgrass, violated the South Carolina Rules of Professional Conduct and imposing a sanction in the form of restricting, prohibiting the use of secret recordings that were taken during the pre-suit investigation as to the infringement of my client's product. Your Honor, we believe there were three issues in which the District Court erred. First, there was an error in the construction of the applicable law. We believe there was an error in the construction of the applicable facts, both leading to an abuse of discretion. And we also believe that even if there was a violation of the rules, that the District Court erred in failing to impose the least extreme sanction as required by the U.S. Supreme Court through the Court's inherent powers. Your Honor, as an initial matter, the District Court concluded that Attorney Nolan was subject to the South Carolina Rules of Civil Procedure concerning the pre-suit investigation. It is uncontested that in September of 2007, October of 2008, more than a year before the lawsuit was filed, an investigator was sent by bequest of Mr. Nolan to South Carolina from Arkansas. Mr. Nolan is an Arkansas attorney, and the investigator took certain recorded conversations of undercover bias. So how did the court err? How did the District Court abuse its discretion? It abused its discretion in first in finding that Mr. Nolan was subject to the South Carolina Rules of Civil Procedure when he wasn't admitted to South Carolina at the time the investigation was filed. So what rule should have governed here? What state rule should have governed? If there was an ethical argument, then Arkansas obviously would have been the state that applied at the time because there was no suit pending in Georgia. If there was a complaint regarding the way he conducted himself as an attorney, a report should have been made to the appropriate Arkansas entity which governs attorney conduct. Don't ethics rules usually apply in the jurisdiction in which the conduct occurs? Isn't there reciprocity? I mean, I looked at Georgia. I frankly haven't looked at Arkansas. If you're barred in Georgia, South Carolina rules would apply. Actually, let me just supplement. I'm reading from something, the Arkansas Rule of Professional Conduct 5.3 that says that the rules of the jurisdiction in which the lawyer's conduct occurred or if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. That's the Arkansas rule, unless I've mistyped it. Your Honor, we would refer to South Carolina Professional Rule 8.5B, Subsection 2, which I believe has a companion part in both Georgia and Arkansas in which it states the lawyer shall not be subject to discipline if the conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur. In this particular case, the evidence is that – The interviews were all in South Carolina, weren't they? Mr. Nolan's belief was that the case was going to be prosecuted and tried in Georgia, and that is supported by the evidence by his arguments during the sanctions hearing and the fact that he did file the case in Georgia, and they had two Georgia attorneys retain his local counsel there, the fact that the plaintiffs are incorporated in Georgia, the fact that Carolina Fresh Farms at one point in time had a Augusta, Georgia store, and the fact that the sub-licensee agreement at issue in this case had a Georgia law provision in it. So although Mr. Nolan conceded to Judge Seymour that he knew there could be a possibility that the case could be transferred to South Carolina, it was always the intent of the parties once they found out that an infringement occurred to bring the case in Georgia. Georgia has no prohibition on attorneys. So you think that the district court in its discretion and fact-finding power could not actually find to the contrary? Based on the facts of this case, I believe that was error, Your Honor. And there's additional information. Again, he was not admitted to the bar at that point in time. It's also important to point out that the recordings were lawfully obtained under the statutes of both Georgia and South Carolina. Both jurisdictions are single-party consent jurisdictions with regards to secret recordings. So when you take the ethical obligations of the attorneys out, so long as one party consents, then the recordings were lawful. So there was no illegal conduct under the statutes in this case. Your Honor, even if the court was correct in finding that the South Carolina Rules of Professional Conduct apply to conduct that occurred before he was admitted pro hoc in South Carolina, which was in 2010, the court is under an obligation to use the least extreme sanction appropriate to curtail the conduct. In this particular case, such conduct was that he was operating under the belief that there was no prohibition against the recordings. The conduct itself was legal under the statutes of both cases. He believed the case was going to be brought in Georgia, which had no ethical obligation under the state. And he did not know that there was a prohibition in South Carolina at the time in 2007 and 2008. When you look at the totality of the circumstances regarding his beliefs and what transpired, it was an error for the court to not either personally reprimand the attorney or do some sort of small monetary fineness to the attorney, but instead took away the heart of this case and punished the plaintiff, which the court found had no participation or knowledge or did not act in that faith, by removing these recordings. The recordings established, which are... I don't remember. Do you make an argument to us or did you make an argument to the district court that maybe the sanction should have been to exclude the recordings but not the investigator's testimony about the conversations or would... I don't believe we argued either. I believe that there was a subsequent motion in Lemony during the trial of this case, which took the original holding, excluding the recordings, and then expanded on that, saying that at trial, no information that derived from those recordings could be used. In our argument to this court, we're saying that that compounded the prejudice because not only could we not use the recordings, which had clear admissions that the product was being sold by Carolina Fresh Farms employees, but now we couldn't even call witnesses, the employees or the principal, John Fogle, who also had a recorded statement, at trial to discuss the fact that they made those statements in the recordings because it was all prohibited. That goes to, I believe, our argument of the substantial prejudice that occurred not only in taking away the heart of this case by excluding the admissions, multiple admissions, but also the argument that we had other opportunities to get this information out at trial, which we did not because we couldn't even call the witnesses to examine or cross-examine them at trial based upon that motion in Lemony, which we did raise in this argument. Was there any independent evidence of infringement of the plant variety patent? Or was it just entirely these admissions, such that the case turned on whether or not they were admissible? There was other evidence, Your Honor, but this particular variety does not have the ability to be genetically tested. There's no way to take a sample of it, test it, and say this is TIFF flare. As a result of that, we had to, at trial, basically go to business records, things along those lines to show that there was an infringement taking place This was the strongest direct evidence that occurred before litigation began in 2007 and 2008, two years after the sub-license agreement had been rescinded, which showed that the employees of Carolina Fresh Farms admitted to the undercover buyer through recordings that they were selling TIFF flare, which was my client's product, in violation of their revoked sub-license agreement, or they were selling what is TIFF flare, but calling it Carolina Green, which was a fabricated name of Carolina Fresh Farms, or they were selling something that had all the characteristics of TIFF flare, or it was even better, which at trial we established there was only two varieties, common centipede, which had general characteristics of that, and TIFF flare, which had the enhanced characteristics, which were protected under the PVPA. Okay, so the jury found no liability based on whatever else you had. That is correct, Your Honor. We'd also like to point out, and I think it's very important to note, that under various circumstances, the tapes could have come in. If this case stayed in Georgia and was not transferred by the district court to South Carolina, there would have been no violation, there would have been no sanction, because that conduct is not prohibited, and the tapes would have come in, the recordings would come in. When the case was transferred to South Carolina, had Mr. Nolan not moved to be admitted pro hoc, there would be no admission. Had Turf Grass retained another counsel, myself, a new law firm, had Mr. Rickfield, who the Georgia attorney was working when it was originally filed, prosecuted the case where there's clear evidence in the motion hearing that he was not involved in the investigation, there would have been no violation of the South Carolina Rules of Professional Conduct by any of those attorneys. Therefore, there would not have been a sanction against any of those attorneys. So the recordings would come in. Again, two different situations where the recordings would come in with the same conduct by the same attorney. Therefore, the sanction was not appropriately tailored. Wait, if one of the arguments is, well, in another jurisdiction it would have been allowed, well, you could probably say that about the enforcement of any sanction with regard to state bar rules. There's always going to be a lot of places or other jurisdictions in which the conduct is allowed. So yes, but where does that get you? Again, even if the case being transferred to South Carolina, the conduct had Mr. Nolan not been admitted pro hoc v. j., there would have been no ability to even ask the court for a sanction. So by his integrity and honesty in coming forward because he didn't believe anything was incorrectly done and moving to a peer, his client was actually harmed. And that's the point going to the court needs to draft the sanction in the least extreme measure. Again, the least extreme measure would have been in some form of reprimand or something directly against Mr. Nolan. Instead, the court went to gut the strongest evidence and arguably the entire case by excluding these recordings based on a series of events that ultimately got the South Carolina rules of professional conduct involved in this case. And we believe because of that there was an error in failing to comply with the U.S. Supreme Court's guidance regarding the use of sanctions in this court's inherent power and making sure that they are the least extreme of all available. But I don't understand. Surely there is some other way of bringing out that same evidence perhaps based on the information, whether or not it was properly obtained by deposition or inquiry or in derivatories? The problem is, Your Honor, based on both the sanction order and the motion in limine order, we were not able to get any information that resulted from recordings. I would equate it similarly to a criminal case in which there's an unlawful search and seizure and the ruling is you can't get any benefit from the proof of the poisonous tree. Essentially, we couldn't depose the employees who were recorded saying that this was tip flare at the time because the order said we could. Put aside essentially, were you prohibited from deposing the people who made the admissions and the recordings? My understanding from the district court's order was that we were prohibited from using the information in the recording or using any information that we derived from the recording. If we had independent information. Did you try to depose the very individuals, these were sales people and one was the CEO maybe? The CEO, yes. The second CEO, right? The first CEO. We did not try to depose the employees, Your Honor. There was an issue with deposing Mr. John Vogel. According to representations, he was very ill at the time of this case. He was initially a party into it as one of the claims against him and based upon his physical condition, it was determined that that would not be in the record. What about the sales people? The sales people were not deposed, Your Honor. Because you were barred from doing so or because you just didn't bother or thought you were barred but didn't test the proposition or what? I can't honestly answer that at this point in time with the rationale of not deposing them, but it's my understanding that once that order came out, that was what we were operating under, is that any information that came from those recordings, which would be the fact that if they said they were selling tick players, that would be information. Right, but I'm imagining, right, the deposition and the person is under oath and you say, you now ask the questions. The very questions that the investigator asked, is the person going to, maybe the person will say, I have a choice, I can either lie or I can tell the truth, and if I tell the truth, I can end up saying the same thing as I told the investigator. Yes, Your Honor, and they were not deposed. That was not tested, that proposition. And I do note that my time has expired. Yes, we'll restore two minutes for rebuttal. Thank you, Madam Chief Judge. May it please the Court. We respectfully submit that the district court should be affirmed. This appeal doesn't concern unique issues of patent law. The district court correctly applied the regional circuit court law, the South Carolina rules of professional conduct, and evidentiary standards. At the motion for sanctions, at that hearing, I would like to start by posing the same probing question that Senior District Judge Seymour posed to Attorney Noland. And it's on page 135 of the appendix. Judge Seymour said, so why are we even here? And that is the same question, a very important question. The clock's not working. Sorry. You can spot me a couple minutes later. I know. I can't let that happen. Thank you, Chief Judge. Page 135 of the appendix. The court says, so you still intend to use the conversations in your case. Plaintiff's lawyer, Mr. Noland, said, it doesn't sound like it, no, conceding that he's not going to use them. Then she said, the same question I have here today, so why are we here? She said, I mean, if you've read the rule and you know that the case is transferred to South Carolina and you know that South Carolina forbids these type of surreptitious recordings, I'm paraphrasing now, how do you plan to use these conversations in South Carolina? His response was, well, I did some research, and I think that even though I'm telling people in Louisiana that he's an employee, he's an independent contractor here, Your Honor. And then the court said, but that's not what the rule says. Do you agree? And his answer at the top of appendix 136 is, yes, I agree with your reading of the rule, Your Honor, I do. But this appeal, they come to court here in Washington, D.C., and state that the judge applied the wrong rule, but at the hearing before the judge, he agreed with the judge that the correct rule was being applied. That's not quite what he said. He said, I agree with you about the rule, and they have two arguments, that the South Carolina rule shouldn't have been applicable. So it doesn't matter what the South Carolina rule says. It can be exactly what the judge thought it said. It's not the applicable one. And second, even if it is applicable, the sanction was extreme. That's correct. But as it relates to the applicability of the law, what law applies and the correct reading of the rule, the trial court properly excluded these unlawfully obtained recordings. And it's very important to understand that the standard is abuse of discretion. And as it relates to a motion such as this on appeal, this court, the Federal Circuit, has expressed extreme reluctance to overturn these type of orders. In the Transqueen case, this court in 2002 said, to hold that the district court… Can I ask you about… I think we're familiar with how an abuse of discretion standard applies, and this is kind of within the field of abuse of discretion and all of that. Tell me about the deposition opportunities that were available or were foreclosed as to the individuals who said things in the excluded recordings. Very good question, Your Honor. Judge Seymour did not prevent them from doing discovery, from deposing these witnesses. She only narrowly limited her exclusion of the evidence as to the recorded conversations. They were free for the next year and a half to conduct discovery. Including to interview or depose, put under oath, the very people whose words they got on tape and wanted to use but were forbidden to do. Exactly, and I imagine that they would use the formal rules of discovery and the rules of civil procedure to actually depose these witnesses and take their deposition, hear what they had to say. The judge only narrowly limited her exclusion as to the evidence that was surreptitiously obtained. They were entitled to do discovery, take depositions. Now, how would you know who to discover unless you had this information that was said to be improperly obtained? Isn't that what happened? Well, in this particular situation, they knew the names of the people that they recorded because they had their names. And so if they had noticed their discovery, they'd say, you know, why us? And we'd say, well, we have reason to think that you have knowledge that can help us. And the judge says, you obtained that knowledge illegally, you can't use it. Well, in this particular situation, they could have asked a discovery question, give me the names of your store employees for these stores. In fact, they asked that question and we answered and provided the names of all these witnesses. As it relates to the first CEO, I think you mentioned, Mr. Fogle. He's actually one of the main parties, John A. Fogle Sr. His grandson's here and he's Mr. Fogle as well. That's Andy Fogle. But they were going to take the deposition of Mr. Fogle. We told them that you can do that, that's fine. The problem is he's in very bad health. We need to talk to the court about maybe the scope of the deposition. And they never followed up on taking his deposition. They took Mr. Fogle's deposition for, you know, over a day. And in that deposition, Mr. Fogle gave names of all the employees and all the store clerks. And so they had the ability to discover any and all people and to depose any and all people. Let me ask you a particular question. I don't know if this is what Judge Newman was going after, but you don't believe that they would have been precluded from trying to depose the employees that had been the subject of the surreptitious recording simply because the judge would have then said, no, no, no, no, that's too related to the recording stuff. So those guys are out for good even in terms of depositions. Absolutely. I assumed that they would take these depositions, but they never did. And it's important to note that the judge, in carefully subscribing her remedy, which was the most appropriate under the circumstances, she said evidence of what they bought and any testing thereof or anything like, for example, the documents was fair game. In fact, the investigator actually took the stand at trial and testified. And what did he testify about? He testified about all the unrecorded conversations that he had with Carolina Fresh Farms employees. And what he said is largely cumulative as to what he claims that these recordings, in fact, said. And if you listen to the surreptitious recordings, you can hear where store employees are saying, we're not selling tip layer, this is not tip layer. This is not what you say it is. But then he was badgered, or the store employee was badgered by the investigator to actually write the words. You're asking us to consider the content of the excluded recordings at this point? No, Your Honor. But in the memo in support of the motion for sanctions, actual dialogue of the conversation was set forth, and that's in the record. But if you look at the overwhelming circumstances, the law in the state of South Carolina is abundantly clear, could not be more clear. And I will admit, they did file this case in the state of Georgia. But the reason why, and this is actually not in the briefs, the reason why the case was transferred from the state of Georgia district court to the district court of South Carolina is because it was improperly filed in Georgia. It wasn't transferred for convenience of witnesses or in the interest of justice. It was transferred because they never had jurisdiction in the district court of Georgia to begin with. It was improperly filed there. And they didn't have jurisdiction why? They didn't have jurisdiction because none of the alleged actions arose or took place in the state of Georgia. And a defendant is entitled to jurisdiction in the place in which they have their principal place of business, which in this case was a very small town in Orangeburg, South Carolina. And Judge Sands… There was no Augusta office at the time? Not at the time. No, there was an Augusta office a year or so, I think, Your Honor, before the contract was even terminated. So four or five years later, three or four years later, this case therefore arose. But is there really such a finding? If they were improperly propagating a plant that was developed in Georgia, perhaps that would be enough connection with wherever the illegal propagation took place. But there was no allegation in the complaint that said any of the alleged, I'll say, infringement took place in Georgia. And there was no contact sufficient by at least a judge in the state of Georgia to support Georgia. It was transferred to South Carolina, so it never should have been there anyway, is what the order. And that order is unappealed. They do not appeal the merits of the motion to transfer venue to the only state in which it was proper, which is in South Carolina. As it relates to the exclusion, opposing counsel stated that the sanctions would not have been set forth by the court if Mr. Nolan hadn't been admitted pro hoc vice. And that is just not the case. The sanctions were because evidence was gathered in a patently unethical and surreptitious manner. Regardless of Mr. Nolan being admitted pro hoc vice in the state of South Carolina, that evidence was improperly obtained. It shouldn't have been before the court. And it's important to understand in a case like this, Your Honor, is that this was a two-week jury trial. All the causes of action went to the jury on everything. And the jury returned a verdict in favor of Carolina Fresh Farms on all causes of action. And this is why. Because the plaintiffs, the appellants, intentionally terminated a contract that they had with us for purposes of competition with one of our competitors. They terminated the agreement. And then the crux of the allegations below were this. That Carolina Fresh Farms failed to destroy the fields. That was the crux of the allegations. But the physical evidence and the testimony 100% disputed whether or not the fields were destroyed. The plaintiffs admitted that if we didn't destroy the fields, if we destroyed the fields, then there would be no infringement. And Carolina Fresh Farms, the evidence before the jury was that all, every single field was rotated out of tenth-layer grass. Carolina Fresh Farms paid $75,900 to fumigate the fields. That's to gas all the fields with methyl bromide. And then they purchased 275 gallons of what's referred to as glycophosphate, which is commercial-grade Roundup. And they spent $80,000 to plant those fields in common centipede. And the evidence was clear that Carolina Fresh Farms was not selling tenth-layer and palming it off. Carolina Fresh Farms was selling its own grass. At a point in time, they referred to it as Carolina Green because sod growers kind of dress up their grass for purposes of marketing. And Carolina Fresh Farms did not violate the Plant Drought Protection Act, did not violate the Lanham Act. And after a two-week trial, the jury heard all the proper evidence. And the court properly barred the jury from listening to polluted evidence, evidence that violated standards, that violated formal rules of discovery, that violated the rules of professional conduct. She excluded that. The district court was proper. And we respectfully submit that the district court should be affirmed. Okay, thank you. Thank you. Just briefly, Your Honor, the sanctions were not tailored to the offense, the alleged offense. I would note that the case decided Midwest Motor Universal Patents and Rentals in Carolina Fresh Farms' brief, all those situations involved conduct of an attorney during discovery, during a pending litigation. I believe in all those cases, the attorney either directly or through an agent during a pending lawsuit reached out to employees or actually believe it was employees, corporate defendants, and either made misrepresentations or tried to elicit evidence in the form of affidavits by going around the discovery process. And the courts said this is prohibited conduct and the sanction for that is we're going to exclude the unlawfully obtained statements during the course of this conduct. In this particular case, the obtained statements was lawful. Had Turfgrass just sent its own investigator out, it would have been fine. It would have had the statements available for use at trial. The only issue here is the fact that an attorney directed an investigator out. Mr. Gowen's contention that if Mr. Noland hadn't been admitted pro hoc vija, the statements would still have been prohibited as an unlawful discovery tactic is without merit because the rules of professional conduct of South Carolina governs the attorneys admitted in that state. They have to be admitted either through a regular member of the bar or through a pro hoc or another available option. If the attorney doesn't get admitted, the court can't reach out and say we're going to sanction the plaintiffs because that's not what happened in this case. The idea was not that the plaintiffs act in bad faith. The concept was not supposed to be to punish the plaintiffs. The idea was supposedly to deter and punish Mr. Noland's conduct in doing something that was purportedly unlawful or against the rules at the time he did it, even though we disagree with the fact that this was pre-admission to the bar. So the point being that, again, if he did not move to be admitted, there certainly would not have been any opportunity to seek sanctions against him. So for that purpose, we believe the sanction was not crafted or narrowly tailored. I would just note, Your Honor, I believe it's in the record. I apologize. I don't have the – we have the entire transcript in there, but the motion in limine Judge Childs ordered on page 33 of the May 16, 2000 – actually, this is Judge Seymour, I apologize – May 16, 2011 transcript. Furthermore, I am ordering that plaintiffs be prohibited from offering testimony about the conversations that were contained in the tape recordings. Blanket. No testimony about anything that was in the recordings. I don't see how, whether we did or did not, how we can call a witness who we knew was – No, not to ask them about those conversations, but to ask them about what they were selling, etc. But we believe it was a blanket prohibition, Your Honor, on it. Your time is up. I apologize. Thank you very much for your time. I thank both counsel and the case is submitted.